UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION

TAMMY BARKER-BAIR　　　　　　:　　　Case No. 1:06-cv-696
　　　　　　　　　　　　　　　:
　　　　Plaintiff,　　　　　　　:　　　Spiegel, J.
　　　　　　　　　　　　　　　:　　　Black, M.J.
vs.　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　:
COMMISSIONER OF　　　　　　　:
SOCIAL SECURITY,　　　　　　　:
　　　　　　　　　　　　　　　:
　　　　Defendant.　　　　　　　:


**REPORT AND RECOMMENDATION[1] THAT:  (1) THE ALJ'S NON-
DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL
EVIDENCE, AND REVERSED; (2) JUDGMENT BE ENTERED IN FAVOR OF
PLAINTIFF AWARDING BENEFITS AS OF AUGUST 10, 2002; AND (3) THIS
CASE BE CLOSED**

This is a Social Security disability benefits appeal.  At issue is whether the

administrative law judge ("ALJ") erred in finding plaintiff "not disabled" and therefore

unentitled to a period of disability and disability income benefits.  (*See* Administrative

Transcript ("Tr.") 12-27) (ALJ's decision).)

**I.**

On October 21, 2002, plaintiff filed an application for disability insurance benefits,

alleging a disability onset date of August 10, 2002, due to myofacial pain syndrome,

fibromyalgia, and depression.  (*See* Tr. 56-58.)

Upon denial of plaintiff's claims on the state agency level, she requested a hearing

---

[1]　　　Attached hereto is a NOTICE to the parties regarding objections to this Report
and Recommendation.

*de novo* before an ALJ. A hearing was held on September 24, 2004, at which plaintiff

appeared with counsel and testified. (*See* Tr. 398-435.) A vocational expert, Mark Pinti,

was also present and testified. (Tr. 423-34.)

On May 25, 2005, the ALJ entered his decision finding plaintiff not disabled. That

decision became defendant's final determination upon denial of review by the Appeals

Council on September 1, 2006. (Tr. 5-7.)

The ALJ's "Findings," which represent the rationale of his decision, were as

follows:

1. The claimant met the disability insured-status requirements of the Act on August 10, 2002, the date the claimant stated she became unable to work, and continues to meet them through December 2008.

2. The claimant has not performed substantial gainful activity since August 10, 2002, the alleged disability onset date.

3. The medical evidence establishes "severe" impairments of residuals of herniated disc at C5-6, and fibromyalgia, but that the claimant does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4. That finding is supported by the testimony of a medical expert, Paul Boyce, MD.

4. The claimant's allegations of total disability are not supported by substantial objective medical evidence or clinical findings and cannot be considered credible when evaluated under the guidelines of 20 CFR 404.1529.

5. The claimant is restricted to performing the basic functional requirements of "light" work as such work is defined for Social Security purposes. She can lift as much as 20 pounds occasionally and 10 pounds frequently. The claimant can perform the walking, standing, and sitting requirements of light work. However, she cannot perform any overhead reaching, or climbing of ropes or ladders. She must avoid hazardous equipment, humidity, and temperature extremes less than 20 degrees and more than 75

-2-

degrees.[2]

6.      Assuming that the claimant also had a "severe" mental impairment, she would remain capable of performing work at the light level of exertion.  She would, however, be restricted to performing essentially unskilled tasks of a low-stress nature (i.e. no direct dealing with the public, no production quotas, and no close or "over-the-shoulder" supervision.)

7.      The claimant is able to perform her past relevant work as a sales clerk, property manager and leasing agent.  Those jobs involved light exertion and did not involve the performance of nay duties or activities that would have been precluded by the functional limitations associated with the claimant's impairments.

8.      Even if the claimant could not perform her past relevant work because of a "severe" mental impairment, she could still be expected to make a vocational adjustment to other work that exists in significant numbers in the national economy.

9.      The claimant's residual functional capacity for the full rang of light work is reduced by the functional limitations associated with her impairments as described in finding No. 5.  If she were able to establish the existence of a "severe" mental impairment, her residual functional capacity for the full range of light work would be further reduced by the functional limitations associated with that impairment described in Finding No. 6.

10.     The claimant is 40 years old, and she is considered to be a "younger individual."[3]

11.     The claimant has a high-school education.[4]

12.     The claimant does not have "transferrable" work skills within the meaning of the Social Security Act.[5]

---

[2]  20 CFR 404.1545.

[3]  20 CFR 404.1563.

[4]  20 CFR 404.1564.

[5]  20 CFR 404.1568.

13.  Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 404.1569 of Regulations No. 4, and Vocational Rule 202.21 of Table No. 2, Appendix 2, Subpart P, Regulations No 4 would direct a conclusion of "not disabled."

14.  Although the claimants functional limitations do not permit her to perform the full range of light work, using the above-cited rule as a framework for decision making, there are a significant number of jobs in the national economy that she could perform.  Examples of such jobs are cleaner and laundry folder.  There are as many ast 25,000 such jobs at the light level of exertion in the region of Dayton, Ohio. There are an additional 8,000 such jobs at the sedentary level of exertion in the Dayton, Ohio region, including inspector and packager.  Those jobs exist in proportionate numbers in the national economy as well.  Such jobs are representative of a significant number of jobs in the national economy that the claimant remains capable of performing despite her alleged impairments, assuming that she had a "severe" mental impairment that precluded her from performing her past relevant work.

15.  The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision.[6]

(Tr. 25-27.)

The ALJ thus concluded that plaintiff was not entitled to a period of disability or disability insurance benefits.

On appeal, plaintiff argues that: (1) the ALJ erred in failing to give controlling weight to the RFC finding of plaintiff's treating physicians; and (2) the ALJ failed to properly evaluate plaintiff's complaints of pain.  Upon careful review, and for the reasons that follow, the undersigned finds that the ALJ improperly evaluated plaintiff's fibromyalgia by failing to give controlling weight to the opinion of plaintiff's treating

---

[6]  20 CFR 404.1520 (e) and (f).

physicians.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explains:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

## A.

For her first assignment of error, plaintiff asserts that the ALJ erred in failing to give controlling weight to the RFC assessment submitted by plaintiff's treating physicians, Dr. Henderson and Dr. Saleh, each finding plaintiff capable of performing less than sedentary work. The undersigned agrees.

*i.*

An ALJ must give the opinion of a treating source controlling weight if he or she finds that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)).

If a treating physician's opinion is contradicted by substantial evidence, the opinion is not to be dismissed, and it is still entitled to deference. *Roush,* 326 F.Supp. 2d at 862. In weighing the various opinions and medical evidence, the ALJ must consider pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6).

Should the ALJ reject a treating physician's opinion, the ALJ must "give good reasons" for not giving weight to that opinion in the context of a disability determination. *Wilson,* 378 F.3d at 544. A ruling issued by the SSA explains that, pursuant to 20 C.F.R. § 440.1527(d)(2), a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (1996); *see also Wilson,* 378 F.3d at 544.

-6-

*ii.*

Fibromyalgia is "a syndrome of chronic pain of musculokskeletal origin but uncertain cause." *Green-Younger v. Barnhart*, 335 F.3d 99, n. 1 (2nd Cir. 2003) (*quoting* Stedman's Medical Dictionary 671 (27th ed.)).

Fibromyalgia has been described as "elusive" and "mysterious," the cause of which is unknown, and for which there is no cure. *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). The Sixth Circuit has recognized that fibromyalgia presents unique complications in assessing disability. In *Preston v. Secretary of Health and Human Services*, 854 F.2d 815 (6th Cir. 1988), the Sixth Circuit examined a claim of disability based on fibrositis, the term previously used for fibromyalgia:[7]

> [F]ibrositis causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances. In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results – a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain "focal tender points" on the body for acute tenderness which is characteristic in fibrositis patients. The medical literature also indicates that fibrositis patients may also have psychological disorders. The disease commonly strikes between the ages of 35 and 60 and affects women nine times more than men.

854 F.2d at 817-18. The Court of Appeals noted that standard clinical tests are "not highly relevant in diagnosing fibrositis or its severity." *Id*. at 820. As the Court of Appeals stated:

As noted in the medical journal articles in the record, fibrositis patients

---

[7]     Currently, the preferred term is fibromyalgia, rather than the older terms, fibrositis and fibromyositis. *See* The Merck Manual (17th ed. 1999), p. 481 .

> manifest normal muscle strength and neurological reactions and have a full
> range of motion. Thus, the standard clinical tests and observations
> conducted by [the doctors] to detect neurological and orthopaedic disease
> were of little aid or relevance in the diagnosis of Preston's disabling
> fibrositis, except as a means of excluding certain neurologic or orthopaedic
> causes of her pain. In other words, the findings of [the doctors] are not
> substantial evidence that Preston's fibrositis is not disabling.

854 F.2d at 820.

Other courts have likewise recognized that fibromyalgia can be disabling even in

the absence of objectively measurable signs and symptoms. *See Green-Younger v.*

*Barnhart,* 335 F.3d 99, 108 (2d Cir. 2003) (ALJ improperly required "objective" evidence

for a disease which eludes such measurements); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th

Cir. 1996) ("The symptoms of fibromyalgia are entirely subjective. There are no

laboratory tests for the presence or severity of fibromyalgia."); *Runyon v. Apfel*, 100 F.

Supp.2d 447, 450 (E.D. Mich. 1999) ("With fibromyalgia claimants, the disability

determination is more necessarily complicated because normal clinical test results do not

necessarily suggest the absence of a disability").

Accordingly, since the presence and severity of fibromyalgia cannot be confirmed

by diagnostic testing, the treating physician's opinion must necessarily depend upon an

assessment of the patient's subjective complaints. *Swain v. Commissioner of Social*

*Security*, 297 F.Supp.2d 986, 990 (N.D.Ohio 2003).

Here, plaintiff has been treated by Dr. Henderson since January 1997 for

fibromyalgia associated with generalized musculoskeletal pain and involvement of the

right and left shoulders. (Tr. 14, 254-275.) Plaintiff was seen regularly (monthly and/or bi-monthly) and treatment notes from Dr. Henderson document the presence of tender points in multiples locations and indicate that plaintiff's conditioned worsened in August 2002. (Tr. 266.) At that time, plaintiff "had a lot of pain," and Dr. Henderson's examination revealed 11 out of 18 tender points. Dr. Henderson further ordered a comprehensive metabolic panel, CBC, and sed rate. *Id.*

In October 2002, Dr. Henderson completed a physician's statement of disability wherein he opined that plaintiff could lift no more than 10 pounds occasionally, and sit, stand, walk, and drive less than one hour per day, and could not reach more than occasionally, and should never handle, finger or feel. He did not anticipate that plaintiff's limitations would change over time. (Tr. 363.)

Moreover, in April 2002, Dr. Henderson referred plaintiff to Dr. Saleh, a pain specialist. Plaintiff was seen by Dr. Saleh on April 12, 2002, and he diagnosed fibromyalgia, noting that his examination found 18 out of 18 trigger points. Dr. Saleh prescribed nonsterodial anti-inflammatory medication, indirect acting muscle relaxers, and analgesics for pain. (Tr. 318.)

In May 2002, upon examination, Dr. Saleh also noted decreased range of motion of the lumbar and cervical spine, as well as deceased muscle strength and hand grip in bilateral upper extremities. (Tr. 293.) He added Neurontin to plaintiff's medication therapy due to increased neuropathic pain. (Tr. 293.)

Treatment notes from October 2002 indicated that plaintiff's "progress is worse." (Tr. 283.) Dr. Saleh noted that plaintiff was admitted to the hospital the prior week due to

-9-

fainting.  He started plaintiff on Duragesic patches, as well as Toradol, for increased pain.  *Id.*

Generally, plaintiff reported to Dr. Saleh that her pain with medication ranged from 5-7 on a scale of 0-10.  Additionally, while treating with Dr. Saleh, plaintiff also attended physical therapy and received chiropractic treatment.  Thus, Dr. Saleh's treatment history reveals that plaintiff was seen on a monthly basis to monitor her medications, treatment and progress.  (Tr. 276.)

In a report dated June 2, 2003, Dr. Saleh described the course of treatment for plaintiff over the preceding year.  (Tr. 276-277.)  Upon physical examination, he found tenderness and muscle spasms over 14 of 18 trigger points, with decrease in muscle strength and hand grip.  (Tr. 276.)  He noted that plaintiff suffers from chronic illness with severe exacerbation, and that she suffers with chronic pain and discomfort.  He further opined that she has difficulty with lifting and doing repetitive activities, and is unable to sit stand or walk for prolonged periods of time.  *Id*.  Dr. Saleh concluded:

> Based on the subjective and objective findings received from diagnostic testing and evaluations, it is my opinion that Ms. Barker is totally disabled.  She has physical limitations in mobility and functional capability as a result of her condition.  She is unable to sustain remunerative employment at any level.  Ms. Barker has stated several times that she would like to return to work but is unable to because of her limitations.

(Tr. 277.)

Dr. Saleh clarified plaintiff's limitations in a report dated June 10, 2004.  In this report, Dr. Saleh indicated that plaintiff could only lift 0-5 pounds occasionally and no amount of weight frequently.  Dr. Saleh found that plaintiff could only stand/walk for 30 minutes a day and sit for 30 minutes a day.  (Tr. 349.)  Dr. Saleh further noted that

plaintiff would be unable to perform postural activities such as stooping or crouching, and that she would have difficulty reaching, handling, fingering, and pushing/pulling.  (Tr. 350.)

Dr. Saleh opined that plaintiff should avoid hazards as well as temperature extremes.  When presented with the definitions of sedentary and light work, Dr. Saleh noted that plaintiff would not be able to perform even sedentary work for an eight-hour workday.  (Tr. 352.)  Dr. Saleh also noted that plaintiff would likely miss work more than three times a month due to her impairments.  (Tr. 352.)

In a narrative report dated July 24, 2004, Dr. Henderson further described plaintiff's condition since her treatment began with him in 1997.  Dr. Henderson noted that plaintiff had been tried on many medications and given many types of treatment but she continued to have diffuse tender points.  He noted that plaintiff experienced more pain and became less functional and more stressed out over time.  (Tr. 387.)  He noted that subsequent evaluations "documented persistent pain requiring pain clinic evaluation and again lack of functionality with respect to employment."  (Tr. 388.)

Notably, plaintiff was further evaluated in May 2004 by Townsend Smith, M.D., another pain specialist.  (Tr. 382-84.)  Dr. Smith also diagnosed fibromyalgia and intractable pain.  (Tr. 382.)  Dr. Smith also believed plaintiff  was limited in her ability to stand or walk for more than two hours in an eight-hour workday or sit for more than four hours.  He did not believe that she could lift more than two pounds occasionally.  (Tr. 378.)  He also noted postural and manipulative limitations. (Tr. 379.)  He, too, believed that she would be unable to sustain sedentary work for a full eight-hour workday.  He

-11-

opined that she would likely miss work more than three times a month due to her illness. (Tr. 381.)

Nonetheless, contrary to the opinions of plaintiff's treating physicians that she is unable to work, the ALJ gave controlling weight to the findings of Dr. Boyce, a non-examining impartial medical expert who reviewed the evidence of record and the one-time examining state-agency physician. Dr. Boyce noted that the clinical findings were unremarkable and opined that the report of the one-time examining state agency physician provided a reasonable assessment of claimant's residual functional capacity, finding plaintiff capable of a reduced range of light work. (Tr. 17.)

The ALJ found that the opinions of plaintiff's treating physicians were neither well-supported by medically acceptable clinical and laboratory diagnostic techniques, nor consistent with other substantial evidence in this case of record. (Tr. 16.) The ALJ concluded "given the minimal clinical findings, it is apparent that the claimant is not rendered totally disabled based solely on fibromyalgia and neck pain." *Id.*

However, the undersigned finds that the ALJ improperly discounted Dr. Henderson's and Dr. Saleh's opinions based upon the purported absence of objective medical findings. *See Gang v. Barnhart*, 2003 WL 22183423, * 5 (E.D.N.Y. 2003) (finding that the ALJ erred by refusing to give controlling weight to the opinions of plaintiff's treating physicians based upon the purported absence of objective medical findings). In *Swain*, the plaintiff's treating physician treated with physical therapy, medication, and B-12 injections. *Id.* As a result the Court noted:

Dr. Pellegrino's diagnosis is well supported by medically acceptable

-12-

> clinical and laboratory diagnostic techniques suitable to the disease of fibromyalgia and represents "all that can be medically done to diagnose [Swain's] fibrositis and to support his opinion of disability."

*Id*.

Here, as detailed above, Dr. Henderson's and Dr. Saleh's findings are supported by medically acceptable clinical and laboratory diagnostic techniques suitable to the disease of fibromyalgia.  Plaintiff was treated with muscle relaxers, anti-inflammatories, anti-depressants, Neurontin, Toradol, Duragesic patches, epidural steroid injections, physical therapy, and chiropractic treatment.

Moreover, it is clearly established law that the opinion of a non-treating "one-shot" consultative physician or of a medical advisor cannot constitute substantial evidence to overcome the properly supported opinion of a physician who has treated a claimant over a period of years.  *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).

Dr. Henderson has treated plaintiff since 1997, and he also referred her to a pain specialist, Dr. Saleh, in the spring of 2002.  Dr. Saleh began treating plaintiff (on a monthly basis ) in April 2002.  It seems evident that Dr. Henderson and Dr. Saleh are in the best position to give an opinion as to plaintiff's physical limitations.  Furthermore, as detailed above, Dr. Henderson's and Dr. Saleh's findings, treatment, and prescription history support a claim of severe disabling fibromyalgia.

Accordingly, the undersigned finds that the ALJ improperly weighed the medical evidence, by failing to give controlling weight to the opinions of Dr. Henderson and Dr.

Saleh.  Dr. Boyce's opinion and the findings of a one-time examining state agency physician that plaintiff could perform a reduced range of light work cannot constitute substantial evidence to overcome the properly supported opinion of physicians who have treated a claimant over a period of years.  *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).

## B.

For her next assignment of error, plaintiff maintains that the ALJ erred in evaluating Plaintiff's pain, credibility, and subjective complaints.

In assessing plaintiff's complaints of pain, the ALJ found that plaintiff's daily activities and her level of functioning in the performance of routine daily tasks are consistent with a capacity to perform a reduced range of light work.  (Tr. 22.)  The ALJ noted:

> There is also an indication that the claimant may be overusing or misusing her prescription drugs.  Treating and evaluating sources suspect that syncopal episodes on multiple occasions were related to alcohol injection and narcotic use.

(*Id.*)

When considering a claim for disability based on pain, the Court is guided by the Sixth Circuit's instruction that, initially, there must be objective evidence of an underlying medical condition.  *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).  If such evidence exists, there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or the objectively determined medical condition must be of a severity which can reasonably be

expected to give rise to the alleged disabling pain.  *Id.*; *see also Felisky,* 35 F.3d at 1038-39.

However, because of the nature of fibromyalgia and its manifestations, application of the usual disability analysis is difficult.  *Swain,* 297 F.Supp.2d at 990.

> The first alternative test under the second prong of Duncan -- medical evidence confirming the severity of the alleged pain -- almost never exists. Analysis is also hampered under the second alternative test  –  the medical condition is of such severity that the alleged pain can reasonably be expected to occur. In most cases, the analysis under this second alternative test will consist of diagnostic findings confirming the severity of the impairment and the opinion of a physician as to limitations that pain caused by such severity will impose.  Since the presence and severity of fibromyalgia cannot be confirmed by diagnostic testing, the physician's opinion must necessarily depend upon an assessment of the patient's subjective complaints.

*Id.* (internal citations and quotations omitted).

Here, the ALJ erred in discounting plaintiff's complaints of disabling pain based on a lack of objective medical findings.  As previously detailed above, Dr. Henderson's and Dr. Saheh's findings and treatment history corroborate plaintiff's subjective complaints of pain.

Furthermore, with respect to the alleged inconsistency regarding plaintiff's ability to engage in daily activities, the ALJ noted that plaintiff is able to feed, dress, bathe, and groom herself, and take care of her personal hygiene needs.  He further noted that she goes to the store, reads, gardens, and goes on the computer.  However, the ALJ failed to note that plaintiff testified that she has good days and bad days.  On a good day, she is able to do some activities, such as housecleaning.  On a bad day, she remains bedridden (Tr. 418.)  Moreover, her sister noted that when plaintiff tries doing things on a good day,

"it can put her down for days at a time" afterwards.  (Tr. 116.)

In any event, the undersigned agrees that plaintiff's ability to engage in daily activities does not establish *ipso facto* that she is able to engage in gainful activity 40 hours per week.  The ALJ erred by selectively relying on plaintiff's testimony regarding her daily activities.  *See Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) ("[A] person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity.")  It is well recognized that a claimant's ability to perform limited and sporadic tasks does not mean she is capable of full-time employment.  *See Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir. 2004); *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001).

Furthermore, with respect to plaintiff's alleged alcohol abuse and/or overuse/misuse of her prescription medication, the ALJ appears to focus on one incident that occurred in November 2002.  Plaintiff spent a day riding on a motorcycle with her then boyfriend and drank eight to teen beers.  Later that night, she was hospitalized after she passed out at home and appeared unresponsive.  (Tr. 213.)  However, in describing the incident, plaintiff testified that she was having a good day, and took a lot of medicine to "keep on ... having fun."  She admitted to drinking too much alcohol and "paid for it." (Tr. 417.)  As a result of the incident, plaintiff further testified that she now only occasionally drinks alcohol.  Moreover, as noted by plaintiff, since that incident, there has been no other suggestion in the record that plaintiff abused alcohol or her pain medication in any manner.

Accordingly, given plaintiff's extensive treatment history and evidence of her attempts to alleviate pain through medication, physical therapy, and pain management treatment, her occasional use of alcohol does not show that her complaints were not credible. *See O'Donnell v. Barnhart,* 318 F.3d 811, 819 (8th Cir. 2003). Thus, the ALJ's findings with respect to credibility are not supported by substantial evidence and should be reversed.

## III.

In view of the opinions of plaintiff's treating physicians and her assertions of disabling pain, there exists substantial evidence of plaintiff's disability. Under these circumstances, the Court may reverse a decision of the Secretary and immediately award benefits if the Court determines that 'substantial evidence does not support the Secretary's decision ... [and] if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits .... A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary lacking." *Felisky v. Bowen,* 35 F.3d at 1041 (citing *Faucher v. Secretary of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994)). Such is the case here.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner, that plaintiff was not entitled to a period of

disability and disability income benefits beginning on August 10, 2002, be found **NOT**

**SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**; that this matter be

**REMANDED** to the ALJ for an immediate award of benefits; and, as no further matters

remain pending for the Court's review, this case be **CLOSED.**


Date:  February 20, 2008                              s/Timothy S. Black
                                                      Timothy S. Black
                                                      United States Magistrate Judge

UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION

| | | |
|---|---|---|
| TAMMY BARKER-BAIR | : | Case No. 1:06-cv-696 |
| | : | |
| Plaintiff, | : | Spiegel, J. |
| | : | Black, M.J. |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **TEN (10) DAYS** after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **THIRTEEN (13) DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to another party's objections within **TEN (10) DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).